NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

---

ALFREDA JONES-SINGLETON,

        Plaintiff,

v.

ILLINOIS MUTUAL LIFE INSURANCE CO.,

        Defendant.

Case No. 3:19-cv-14220 BRM ZNQ

**OPINION**

---

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is Defendant Illinois Mutual Life Insurance Co.'s ("Illinois Mutual") Motion to Dismiss Counts Three and Four, as well as to dismiss the demands for extra-contractual damages of *pro se* Plaintiff Alfreda Jones-Singleton's ("Jones-Singleton") Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) (ECF No. 7). Jones-Singleton opposes the Motion. (ECF No. 9.) Illinois Mutual filed a Reply. (ECF No. 11.) Having reviewed the filings submitted in connection with the Motion and having heard oral argument on February 18, 2020, pursuant to Federal Rule of Civil Procedure 78(a), for the reasons below, Illinois Mutual's Motion to Dismiss is **GRANTED**.

    **I.**    **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**[1]

This matter arises out of a claim for disability benefits by Jones-Singleton on a policy she purchased from Illinois Mutual.

---

[1] For the purposes of this Motion to Dismiss, the Court accepts the factual allegations in the Amended Complaint as true and draws all inferences in the light most favorable to Plaintiff. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). Furthermore, the Court also

1

### A. Factual Background

Jones-Singleton was a 32-year-old social worker for the New Jersey Division of Youth and Family services when she purchased a disability insurance policy (the "Policy") from Illinois Mutual in November 2004. (*See* Amended Compl. (ECF No. ¶ 1-1); *see also* Policy Application (ECF No. 9-1) at 11.) Her application for the Policy states that the base monthly benefit would be $2,040. (ECF No. 9-1 at 11.) However, the parties executed an amendment to that Policy on February 5, 2005 setting the total disability monthly payment at $1,150. (*Id.* at 10.) According to the Schedule attached to the Policy, partial disability would result in a monthly benefit of $575 for as long as six months and a total disability would provide a monthly benefit of $1,150 for as long as 24 months. (*See* Policy (ECF No. 9-1) at 2.) Any disability payments would begin after the expiration of a 90-day Elimination Period. (*Id.* at 5.)

Total Disability is defined by the Policy as an "inability to perform all of the substantial and material duties of your occupation," or, after the expiration of the policyholder's Occupation Period, an "inability to perform all of the substantial and material duties of any occupation for wage or profit in which you might be reasonably expected to be engaged, with due regard to your education, training, experience and prior earnings at the time of your disability." (*Id.* at 4.) Partial Disability is defined as an "inability to perform one of more of the substantial and material duties of your occupation," or "the necessary loss of one-half or more of the time spent by you in the usual daily performance of the duties of your employment." (*Id.*)

Jones-Singleton had timely paid her monthly insurance premiums for approximately 15 years when her employer placed her on intermittent leave in late March 2018 due to a disability.

---

considers any "document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting *Shaw v. Dig. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)).

(ECF No. 9-1 ¶¶ 5, 32.) On April 5, 2018, she was diagnosed with Major Depressive Disorder, Anxiety Disorder and Panic Attacks. (*Id.* ¶ 4.) Jones-Singleton has been under the continual care of a physician since that date. (*Id.* ¶ 17.) She ultimately was placed on forced medical leave by her employer on September 28, 2018, after being provided with a letter stating that she was not to report to work again "until you obtain a note from your physician clearing you of the fourteen restrictions which are precluding you from performing the essential functions of your job." (*Id.* ¶ 10.) Jones-Singleton's employer provided Illinois Mutual with documentation about this disability. (*Id.* ¶ 9.)

Jones-Singleton received a letter from Illinois Mutual dated October 4, 2018 seeking the following: "Claimant's Proof of Loss," "Authorization of Release of Personal Health Information," and a "Disability Income Physician's Statement" from her treating physician. (*Id.* ¶ 40.) Illinois Mutual received documentation of Jones-Singleton's disability on October 15, 2018. (*Id.* ¶ 19.) That same day Illinois Mutual received the Disability Income Physician Statement from Plaintiff's treating physician, as well as an Authorization for Release of Personal Health Information. (*Id.* ¶¶ 20, 28.) Jones-Singleton submitted so-called continuance of disability reports and Attending Physician's Supplementary Statements on the 23rd day of each month from November 2018 through May 2019. (*Id.* ¶¶ 21-27.)

Illinois Mutual requested a signed Social Security Authorization from Jones-Singleton on October 15, 2018. (*Id.* ¶ 43.) In November 2018, Illinois Mutual requested the release of Plaintiff's psychotherapy notes. (*Id.* ¶ 45.) On January 4, 2019, an Illinois Mutual representative requested a "written explanation" of why Jones-Singleton believed herself to be "totally disabled from [her] occupation as a Community Service Officer." (*Id.* ¶ 45.) The email stated, "This, along with the

recently submitted letter from your treating physician [] will then be taken into consideration as we continue to review your claim." (*Id.*)

On January 29, 2019, an Illinois Mutual representative by email told Jones-Singleton the insurer had "processed partial disability benefits up to January 23, 2019," and that it was "continuing to evaluate your claim for benefits. We will notify you as soon as the review is complete." (*Id.* ¶ 46.) Via a February 26, 2019 email, an Illinois Mutual representative wrote that the insurer was "providing partial disability benefits while your claim for total disability is being reviewed." (*Id.* ¶ 47.) She received another email in early March 2018 with the same message. (*Id.* ¶ 48.) On March 14, 2019, Jones-Singleton received an email from an Illinois Mutual representative advising her that the insurer "was working with R3 Continuum to get you scheduled for an independent exam." (*Id.* ¶ 49.) Illinois Mutual required Jones-Singleton to attend an Independent Psychological Examination on April 5, 2019 with R3 and "Dr. Cynthia Boyer." (*Id.* ¶ 67.) Illinois Mutual had Jones-Singleton under surveillance on April 4 and 5, 2019, including as Plaintiff was traveling to and from the Boyer appointment. (*Id.* ¶¶ 86-88.) Jones-Singleton responded to the surveillance by calling the Burlington Township Police. (*Id.* ¶ 91.) In mid-April 2019, Jones-Singleton received an email from the insurer stating, "As soon as we receive the result of the Illinois Mutual IME, we will be able to finalize our review of your claim." (*Id.* ¶ 50.)

Illinois Mutual did not pay any partial disability benefits from June 25, 2018 through September 25, 2018. (*Id.* ¶ 6.) Illinois Mutual paid the partial disability benefit of $575 monthly from October 23, 2018 through April 24, 2019. (*Id.* ¶ 12.) Illinois Mutual had not made any

disability payments, total or partial, after April 24, 2019 through the May 27, 2019, filing of the Amended Complaint.[2] (*Id.* ¶ 32.)

### B. Procedural History

Jones-Singleton filed a Complaint in Superior Court of New Jersey, Mercer County, Law Division on May 29, 2019, though she titled it a First Amended Complaint. (*See* Notice of Removal (ECF No. 1) ¶ 1.) There she claims Illinois Mutual breached the Policy/contract by failing to pay partial disability benefits beginning in June 2018 and not paying total disability benefits beginning in October 2018 after her employer put her on total disability leave on September 28, 2018. (*Id.* ¶¶ 6, 11.) Jones-Singleton further claims Illinois Mutual breached the implied covenant of good faith and fair dealing implicit in the Policy by continually employing stalling tactics and unreasonable delays to avoid paying disability benefits in a timely manner. (*Id.* ¶¶ 41, 42.) In Count Three, Jones-Singleton claims the insurer violated the New Jersey Consumer Fraud Act ("CFA" or the "Act") by demanding psychological notes and records in violation of the law and failing to provide to Jones-Singleton any policy, procedures or clauses in the Policy justifying those demands. (*Id.* ¶¶ 65, 68, 76-77.) In Count Four, Jones-Singleton alleges Illinois Mutual intentionally harassed her and inflicted emotional distress via a claims process that increased and exacerbated the anxiety and depression at the center of her disability claim. (*Id.* ¶¶ 89, 92.) This process resulted in "increased emotional distress, increased anxiety, more bouts of depression and panic attacks, while causing marital stress, familial stress, economic losses, increased pain and suffering and loss of consortium." (*Id.* ¶ 101.) The Amended Complaint sought a judgment against Illinois Mutual in the amount of $7,100.02 of economic loss for unpaid benefits; $19,550 for future

---

[2] At oral argument, Illinois Mutual represented, and Jones-Singleton acknowledged, that total disability benefits payments began soon after the Amended Complaint was filed and have continued through the present.

benefits owed; $50,000 for emotional distress; $50,000 for pain and suffering; $50,000 for marital stress; $50,000 for familial stress; $75,000 for loss of consortium; treble damages for violating the CFA; punitive damages; and an award of attorney's fees and costs. (*Id.* ¶ 102.)

On June 25, 2019, Illinois Mutual removed the action to this Court. (ECF No. 1.) After two extensions were granted to Defendant for the filing of an Answer to the Amended Complaint, Illinois Mutual on August 1, 2019 moved to dismiss the Amended Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 7.) Jones-Singleton filed Opposition to the Motion on August 14, 2019. (ECF No. 9.) Illinois Mutual filed a Reply on August 27, 2019. (ECF No. 11.) The Court scheduled a hearing on the Motion for September 18, 2019. (*See* docket entry of August 28, 2019.) There, the Court ordered the parties to schedule a settlement conference with U.S. Magistrate Judge Zahid N. Quraishi. (*See* September 18, 2019 Text Order.) That conference was held on October 18, 2019, though the Parties did not reach a settlement. Oral argument on the Motion to Dismiss was heard on February 18, 2019. (ECF No. 27.)

## II. LEGAL STANDARDS

### A. Rule 12(b)(6) Standard

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [plaintiff]." *Phillips*, 515 F.3d at 228. "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). However, the plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a

legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* This "plausibility standard" requires that the complaint allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a probability requirement." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than an unadorned, the defendant-harmed-me accusation" must be pleaded; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citing *Twombly*, 550 U.S. at 555, 557).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). However, courts are "not compelled to accept 'unsupported conclusions and unwarranted inferences,'" *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (quoting *Schuylkill Energy Res. Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997)), nor "a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286.

While, as a general rule, the court may not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to Rule 12(b)(6), the Third Circuit has held that "a court may consider certain narrowly defined types of material without converting the motion to dismiss [to one for summary judgment pursuant to Rule 56]." *In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). Specifically, courts may consider any "document *integral to or explicitly relied upon* in the complaint." *Burlington Coat Factory*, 114 F.3d at 1426 (quoting *Shaw*, 82 F.3d at 1220).

## III. DECISION

Illinois Mutual contends the CFA claim should be dismissed because it is well settled that the Act does not apply to denials of insurance claims as a matter of law. (*See* Def.'s Br. in Supp. of Mot. (ECF No. 7-1) at 3-6.) Even if the Act did apply to the denial of insurance claims, Illinois Mutual argues this Count still should be dismissed because the Amended Complaint does not allege facts sufficient to state a fraud claim. (*Id.* at 6.) Illinois Mutual contends the emotional-distress claim should be dismissed because the economic-loss doctrine bars tort-based recovery for claims arising out of breach-of-contract allegations. (*Id.* at 7-8.) Even if the economic-loss doctrine was not applicable, Illinois Mutual argues this Count still should be dismissed because Plaintiff has not alleged sufficient facts to support the tort of infliction of emotional distress. (*Id.* at 9.) Finally, Illinois Mutual contends the Amended Complaint should be dismissed because Jones-Singleton does not allege sufficient facts to establish the legal predicate for an award of extracontractual damages, tort damages or attorney's fees. (*Id.* at 12-15.)

Jones-Singleton counters that the Motion should be denied because she provided Illinois Mutual with proof of loss for her total disability claim on October 15, 2018 but did not receive a disability benefit check for total disability until roughly June 3, 2019. (*See* Pl.'s Br. in Opp. to Mot.

(ECF No. 9) at 2.) This delay, Jones-Singleton argues, on top of the months-long delay in Illinois Mutual's payout of partial disability benefits, constitutes a breach of the contract binding the insurer to its policyholder. (*Id.*)

Jones-Singleton contends the Motion should be denied because these delays were the result of "Illinois Mutual's systematic practices that are used to deny policy holders of the benefits that they are entitled to receive." (*Id.*) Jones-Singleton argues these practices include Illinois Mutual requiring psychotherapy notes in violation of the Health Insurance Portability and Accountability Act, or HIPAA. (*Id.*) Jones-Singleton further contends that in delaying the payouts Illinois Mutual violated the Unfair Claims Settlement Act, N.J. Stat. Ann. § 17:29B-4. (*Id.*) Though she does not include violations of HIPAA or the Unfair Claims Settlement Act as claims in the Amended Complaint, Jones-Singleton argues that violations of those statutes constitute the first prong of establishing a CFA claim, namely "unlawful conduct by the defendant." (*Id.* at 3.) Jones-Singleton cites N.J. Stat. Ann. § 56:8-2[3] for the proposition that "a practice is unlawful whether or not a person was misled, deceived or damaged," and then cites *Cox v. Sears Roebuck & Co.* for the proposition that "[t]here need only be a causal nexus to the Plaintiff's loss because the purpose of the CFA is to proscribe practices that have the capacity to mislead." (*Id.* (citing *Sears Roebuck*, 138 N.J. 2, 17 (1994)).) Jones-Singleton claims Illinois Mutual and its vendors "lied, deceived, concealed, suppressed, and misrepresented material facts," all of which constitute an unconscionable commercial practice as contemplated by the CFA. (*Id.* at 3.) Jones-Singleton quotes *Van Holt v. Liberty Mut. Fire Ins. Co.*: "An unconscionable commercial practice necessarily

---

[3] This Statute is titled, "Fraud, etc., in connection with sale or advertisement of merchandise or real estate as unlawful practice."

entails a lack of good faith, fair dealing and honesty." (*Id.* (quoting *Van Holt*, 163 F.3d 161, 168 (3d Cir. 1998).)

Jones-Singleton contends that to "establish a New Jersey Consumer Fraud Act Claim [a Plaintiff must establish] (1) unlawful conduct by the defendant (2) ascertainable loss by the Plaintiff (3) a causal connection between the defendants' unlawful conduct and the Plaintiffs ascertainable loss." (*Id.* at 2.) Jones-Singleton argues she suffered an ascertainable loss in having to "sell a portion of her mutual funds from the Plaintiff's retirement plan," in having "to take out a personal loan" and in being forced to "make an early withdrawal from a joint certificate of deposit that she owned with her spouse" in order to cover expenses during the period during which Illinois Mutual did not timely pay out disability benefits. (*Id.* at 6.) Because she has established these three prongs, Jones-Singleton argues, she has sufficiently pleaded a CFA claim. (*Id.* at 6.) Accordingly, she contends, Defendant's Motion should be denied as to Count Three.

Jones-Singleton also argues that, contra to Illinois Mutual's contention, the economic-loss doctrine does not bar her claim in Count Four for intentional infliction of emotional distress because Illinois Mutual, as the breaching party, owed Jones-Singleton a duty of care that existed outside the contractual relationship of the parties.[4] (*Id.* at 7.) Jones-Singleton contends this "tort duty of care" exists "to protect society's interest from harm, i.e. the duty arises from policy considerations formed without any reference to any agreement between the parties" while a "contractual duty by comparison, arises from society's interest in the performance of promises."

---

[4] At oral argument, Jones-Singleton also argued Illinois Mutual "had a fiduciary duty to promptly inform the plaintiff what was needed to expedite the plaintiff's total disability claim. The defendant did not inform the plaintiff until on or about 4/26/19 that an IME was even necessary to review the plaintiff's claim for total disability. . . . Illinois Mutual is required to put the plaintiff's interests on greater footing than its own interests." (Feb. 18, 2020 Oral Arg. Tr. at 11:9-20.) Jones-Singleton did not provide a basis for this proposition.

10

(*Id.* at 8 (quoting *Spring Motors Distributors, Inc. v. Ford Motor Co.*, 489 A.2d 660, 672, 98 N.J. 555, 579 (1985)).)[5] Jones-Singleton argues Illinois Mutual breached this tort duty of care via "constant verbal and emotional attacks as well as the physical aggression directed towards the Plaintiff by the Defendant's contracted vendors" that "[n]o reasonable woman could endure." (*Id.*)

Finally, Jones-Singleton contends she "has alleged facts sufficient to establish the legal predicate for award of extracontractual damages, and tort damages," damages that are allowed by language in the policy that Illinois Mutual "promise[s] to pay benefits for your loss caused by injury or sickness as described in this Policy subject to all of the provisions of this policy." (*Id.* at 12.) She argues the Amended Complaint and Brief in Opposition to the Motion "give[] valid and factual allegation for the reasons why this claim should not be stricken."[6] (*Id.* at 13.)

Illinois Mutual replies that Jones-Singleton's "assertion of extra-contractual causes of action and extra-contractual damages is nothing more than an attempt to artificially inflate this case in an effort to extract a disproportionate settlement from Illinois Mutual." (Pl.'s Reply (ECF No. 11) at 1.) Illinois Mutual argues its Motion should be granted because Jones-Singleton

> has not alleged any facts that plausibly establish unconscionable commercial conduct or demonstrate that Illinois Mutual acted with an intention to mislead anyone during its claim investigation. On the contrary, all of the allegations are consistent with a lawful attempt by Illinois Mutual to promptly ascertain all facts necessary to

---

[5] At oral argument, Jones-Singleton cited *People Exp. Airlines, Inc. v. Consolidated Rail Corp.* for the proposition that "defendant owes a duty of care . . . to take reasonable measures to avoid the risk of causing economic damages aside from physical injury to the plaintiff. (Feb. 18, 2020 Oral Arg. Tr. at 13:24-14:2 (citing *People Exp. Airlines*, 495 A.2d 107, 112, 100 N.J. 246, 256 (1985).)

[6] Nevertheless, Jones-Singleton states, "Plaintiff removes her claim for loss of consortium." (ECF No. 9 at 13.) She does not explain further what she means by "removes her claim." Under a separate heading immediately following, she argues she is "entitled to future benefits that may become due under this contract because the Defendant has breached the term and conditions of the Disability Income Policy." (*Id.*)

11

objectively assess plaintiff's claim that she was totally disabled under the terms of the policy at issue.

(*Id.* at 2.) Illinois Mutual cites, for example, Jones-Singleton's assertion that the insurer's requests for psychotherapy records were "motivated by a desire to delay deciding her claim." (*Id.*) However, Illinois Mutual asserts Jones-Singleton "does not allege any facts to establish such motive." (*Id.*) "The inference Plaintiff wishes this Court to draw is not supported by any allegation of fact," Illinois Mutual contends, but rather "is a leap of faith." (*Id.*)

In its Notice of Motion, Illinois Mutual seeks "an order dismissing the Complaint pursuant to Fed. R. Civ. P. 12(b)(6) due to plaintiff's failure to assert a claim against Illinois Mutual for which relief can be granted as a matter of law." (ECF No. 7 at 1.) However, it is clear from Illinois Mutual's proposed Order, briefs in support of the Motion and oral argument that what Illinois Mutual seeks is partial dismissal of the Amended Complaint, meaning the dismissal of all counts and damages claims except Count One's breach of contract claim and Count Two's claim for breach of implied covenant of good faith and fair dealing.[7] As a result, the Court examines only

---

[7] At oral argument, the Court conducted the following colloquy as to Count Two:

> THE COURT: Ma'am, you understand that [Defense] counsel agrees that at the minimum you have a breach of contract claim that can be prosecuted?
> MS. JONES-SINGLETON: Yes.
> THE COURT: Okay.
> MS. JONES-SINGLETON: As well as I believe he was not contesting the unfair—what's it called? Bad faith. The bad-faith claim. He wasn't contesting that as well, I believe.
> MR. LESKO: Just to clarify, Your Honor, that's not the case at all. The bad-faith claim also seeks extra-contractual damages. So I would say that there's not a basis for it. I think the Complaint itself sets forth at least a reasonably debatable basis for the claim determination which was to pay the claim. So I don't see a basis for bad faith either.

(Feb. 18, 2020 Oral Arg. Tr. at 6:16-7:6.)

Count Three's allegations of violation of the New Jersey Consumer Fraud Act, Count Four's claim for the intentional infliction of emotional distress and her claim for extra-contractual damages.[8]

### A. Count Three: New Jersey Consumer Fraud Act

Illinois Mutual argues Count Three should be dismissed because New Jersey courts have consistently held that the CFA is not implicated by the payment of insurance benefits. (ECF No. 7-1 at 3 (citing *Beaver v. Magellan Health Servs.*, 80 A.3d 1160, 1168 n. 1 (N.J. Super. App. Div. 2013); *Van Holt v. Liberty Mut. Fire Ins. Co.*, 163 F.3d 161, 168 (3d Cir. 1998); *Polizzi Meats, Inc. v. Aetna Life and Cas. Co.*, 931 F. Supp. 328, 333 (D.N.J. 1996). The Court agrees.

In *Van Holt*, the Third Circuit affirmed this Court's grant of summary judgment to defendant insurer in a case in which New Jersey homeowners alleged the insurer's investigation and adjustment of a flood-insurance claim violated the CFA. 163 F.3d at 168. As the Third Circuit stated, "The mere denial of insurance benefits to which the plaintiffs believed they were entitled does not comprise an unconscionable commercial practice." *Id.* Furthermore, the Third Circuit stated, even if the insurer "violated regulations promulgated under the New Jersey Unfair Claims Act, the alleged violations do not constitute fraudulent or misleading commercial practices." *Id.* Finally, the Third Circuit recognized that "New Jersey courts that have decided the issue have

---

[8] As an initial matter, the Court concludes it has diversity jurisdiction pursuant to 28 U.S.C. § 1332 over this action as Illinois Mutual confirms it is a company incorporated in and with a principal place of business in Illinois, while Jones-Singleton states she is a citizen of New Jersey who seeks benefits from the Policy and damages in excess of $75,000. (*See* Notice of Removal (ECF No. 1) ¶ 4; *see also* Am. Compl. (ECF No. 1-1) ¶¶ 1, 102.) This Court also has jurisdiction under 28 U.S.C. § 1441, pursuant to which a defendant may remove to this Court any state court civil action over which this Court would have original jurisdiction.

consistently held that the payment of insurance benefits is not subject to the Consumer Fraud Act." *Id.* (citing *e.g., Nikiper v. Motor Club of Am.,* 557 A.2d 332, 336 (N.J. Super. Ct. App. Div. 1989).

This Court concludes the weight of New Jersey case law is that the payment of insurance benefits is not subject to the CFA and will grant Defendant's Motion to Dismiss Count Three's CFA claim.

Even if the payment of insurance benefits were subject to the CFA, the Court concludes Count Three still should be dismissed because Jones-Singleton has not sufficiently alleged facts that could be interpreted as constituting a CFA claim. For example, as the *Van Holt* Court concluded, the failure to pay benefits immediately is not an unconscionable commercial practice. 163 F.3d at 168. Also, while Jones-Singleton argues Illinois Mutual's requests for psychotherapy notes constitute a HIPAA violation, she has not cited any particular provision of that Act setting out this proposition. Indeed, in her Amended Complaint Jones-Singleton alleges only that she "was not required by law to submit psychotherapy notes to Illinois Mutual." (ECF No. 1-1 ¶ 68.) However, Jones-Singleton fails to direct the Court to any governing or relevant HIPAA provision. Therefore, it is the terms of the Policy that govern the information to be provided, and the relationship between Jones-Singleton and Illinois Mutual, as alleged, was only a contractual one.

Jones-Singleton argues the Policy provided only for physical examinations and "does not contain any provisions regarding psychological examinations." (*Id.* ¶¶ 66, 70.) Jones-Singleton appears to base this contention on the following language from the Policy: "Physical Examination: We shall have the right at our expense to have you examined as often as is reasonably necessary while a claim is pending." (ECF No. 9-1 at 6.) Jones-Singleton's argument suggests the proposition that disability based on Major Depressive Disorder, Anxiety Disorder and Panic Attacks cannot be subject to investigation by an insurer, lest a claimant's condition be exacerbated, nor to

psychological examination because the Policy provides only for physical examinations. The Court declines to interpret the Policy as Jones-Singleton suggests. The Court also is not persuaded that the alleged failure to provide policies and procedures regarding psychological examinations without more constitutes either a fraudulent, misleading or an unconscionable practice. Finally, while she alleges the failure to promptly pay her disability claim was a violation of the Unfair Claims Settlement Act, this alleged violation "do[es] not constitute fraudulent or misleading commercial practices." *Van Holt*, 163 F.3d at 168. Accordingly, Illinois Mutual's Motion to Dismiss Count Three is **GRANTED**.

### B. Count Four: Intentional & Negligent Infliction of Emotional Distress

Illinois Mutual argues Count Four should be dismissed because the economic-loss doctrine bars recovery in tort for claims stemming from contract. (ECF No. 7-1 at 7 (citing *Bracco Diagnostics, Inc. v. Bergen Brunswig Drug Co.*, 226 F. Supp. 2d 557, 562 (D.N.J. 2002) (citing *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 618 (3rd Cir. 1995)).) Illinois Mutual contends that under New Jersey law, a plaintiff may not use tort claims to "enhance the benefit of the bargain it contracted for with the defendant." (*Id.* at 8 (citing *Saltiel v. GSI Consultants, Inc.*, 788 A.2d 268, 280 (2002)).) In other words, "a tort remedy does not arise from a contractual relationship unless the breaching party owes an independent duty imposed by law." (*Id.* (quoting *Saltiel*, 788 A.2d at 280).)

Jones-Singleton argues there was such a duty here, a duty of care Illinois Mutual owed to its policyholder. (ECF No. 9 at 1 (citing *Spring Motors*, 489 A.2d at 672).) However, Jones-Singleton's reliance on *Spring Motors* is misplaced. The *Spring Motors* Court may have expanded the ability of the plaintiff there to pursue damages for economic loss from the purchase of defective goods to sellers further down the supply chain, but it foreclosed that plaintiff's ability to pursue

15

recovery of damages for the tort of negligence. *Spring Motors*, 489 A.2d at 663. As a result, the Court cannot conclude from *Spring Motors* that Illinois Mutual owed Jones-Singleton a duty that existed outside the confines of the Policy.

Even if Illinois Mutual did owe Jones-Singleton a duty that existed outside the Policy, the Court is not persuaded Jones-Singleton has pleaded factual allegations sufficient to constitute a claim that a breach of that duty resulted in the infliction of emotional distress. As the New Jersey Supreme Court has stated, "Generally speaking, to establish a claim for intentional infliction of emotional distress, the plaintiff must establish intentional and outrageous conduct by the defendant, proximate cause, and distress that is severe." *Buckley v. Trenton Saving Fund Soc.*, 544 A.2d 857, 863 (N.J. 1988) (citing M. Minzer, *Damages in Tort Actions,* vol. I, § 6.12 at 6–22 (1987) (Minzer)).

Jones-Singleton alleges Illinois Mutual intentionally inflicted emotional distress through the following acts:

> 1. Misrepresenting pertinent facts; 2. Failing to acknowledge the Plaintiff's inquires; 3. Belittling the patient; 4. Discriminating against the Plaintiff for having a mental health condition; 5. Having the Plaintiff followed to her psychological evaluation; 6. Being condescending to the Plaintiff; and 7. Canceling psychological independent medical exam hours before the appointment.

(ECF No. 9 at 7.) Jones-Singleton contends these acts were "psychological triggers" for her that caused her "increased chest pains, muscle tension, headaches, sleep disturbance, difficulty concentrating for sustained periods of time, crying spells, jaw clenching, weakness in limbs, irritability, worry, fear, hypervigilance, racing thoughts, sadness and low energy just to name some the Plaintiff's symptoms of depression and anxiety." (*Id.*) However, a review of the correspondence contained in the Amended Complaint does not demonstrate the kind of "intentional and outrageous conduct" required to sustain this cause of action. (*See* ECF No. 9-2.)

The communications presented as evidence before this Court, and as contained in the Amended Complaint, are marked by language that strike the Court as professional and polite, and that appear to be a straightforward presentation of requests and reminders. Therefore, the Court concludes that, even were the economic-loss doctrine not a bar to Jones-Singleton's tort claim in Court Four, as it is, Jones-Singleton has not sufficiently pleaded factual allegations to support a claim for infliction of emotional distress. Accordingly, Illinois Mutual's Motion to Dismiss Count Four is **GRANTED**.

### C. Extra-Contractual Damages

Illinois Mutual seeks the dismissal of what Jones-Singleton calls a request for damages for "the harm that has occurred as a result of Defendant's acts" and what Defendant terms extra-contractual damages. (ECF No. 7-1 at 12; *see also* ECF No. 1-1 ¶ 102.) Illinois Mutual argues the "Amended Complaint improperly seeks remedies for which plaintiff has failed to assert the necessary predicate allegations or cause of action." (*Id.*)

More specifically, Illinois Mutual contends Jones-Singleton is a *pro se* Plaintiff and so by definition cannot merit a grant of attorney's fees, even if the American rule, under which, absent certain exceptions, each party generally bears its own litigation costs, were not to be observed. (*Id.* at 14-15.) It also argues Jones-Singleton cannot claim a loss of consortium because that is a claim based on an injury suffered by a claimant's spouse, and Plaintiff's husband is not a party to this litigation. (*Id.* at 13.) Furthermore, Illinois Mutual contends, "a loss of consortium claim cannot be derived from a spouse's breach of contract claim." (*Id.* (citing *Murphy v. Implicito*, 392 N.J. Super. 245, 267 (N.J. Super. App. Div. 2007).)

Additionally, Illinois Mutual argues Jones-Singleton has no basis for seeking future benefits because she "has not alleged any facts upon which to maintain a claim for anticipatory breach." (*Id.* at 14.)

Finally, Illinois Mutual contends Jones-Singleton's failure to "allege[] facts sufficient to give rise to any independent tort arising from Illinois Mutual's investigation and disposition of her claim for disability insurance benefits" is fatal to her demands for tort-based damages for emotional distress, pain and suffering, punitive damages.

Jones-Singleton counters that she adequately pleaded facts demonstrating that Illinois Mutual "lied to the Plaintiff about the provisions in her disability contract, misrepresented important facts, purposefully omitted information to the Plaintiff's medical providers, conspired with its contracted vendor to prevent the Plaintiff from receiving the psychological independent medical exam [and] used systematic stall tactics to purposefully frustrate the client." (ECF No. 9 at 12.) As a result, Jones-Singleton argues, Defendant's Motion to Dismiss claims for tort damages (emotional distress, pain and suffering) future benefits, and attorney fees should be denied.

As stated above, the Court is not persuaded Illinois Mutual owed Jones-Singleton a duty that existed outside the confines of the Policy. From that conclusion it follows that the economic-loss doctrine bars recovery in tort for claims stemming from contract. *Bracco Diagnostics*, 226 F.Supp.2d at 562 (quoting *Duquesne Light*, 66 F.3d at 618). Even assuming, *arguendo*, that Illinois Mutual did owe Jones-Singleton a duty that existed outside the Policy, the Court already has concluded Jones-Singleton has not pleaded facts sufficient to sustain a cause of action for the tort of intentional infliction of emotional distress, nor has she sufficiently pleaded a claim for violation of the CFA. It follows from those conclusions that Plaintiff's demands for what Illinois Mutual calls extra-contractual damages also fails. Accordingly, Illinois Mutual's Motion to Dismiss Jones-

Singleton's demands of damages for emotional distress (including mental or familial distress), pain and suffering, punitive damages, loss of consortium, future benefits and attorney's fees is **GRANTED**.

### IV. CONCLUSION

For the reasons set forth above, Illinois Mutual's Motion to Dismiss Counts Three and Four, as well any demands for extra-contractual damages, is **GRANTED** as set forth herein and in the accompanying Order.

**Date: March 13, 2020**　　　　　　　　　　　　*/s/ Brian R. Martinotti*
　　　　　　　　　　　　　　　　　　　　　　　**HON. BRIAN R. MARTINOTTI**
　　　　　　　　　　　　　　　　　　　　　　　**UNITED STATES DISTRICT JUDGE**